**Dushon HAMPTON, Petitioner–Appellant,**

**v.**

**UNITED STATES of America, Respondent–Appellee.**

**No. 97–1782.**

United States Court of Appeals, Sixth Circuit.

Submitted: Aug. 12, 1999.

Decided: Oct. 12, 1999.

Melvin Houston (briefed), Detroit, Michigan, for Petitioner–Appellant.

Dushon Hampton, Detroit, Michigan, Pro Se.

Jennifer J. Peregord (briefed), Diane L. Marion (briefed), Office of the U.S. Attorney, Detroit, Michigan, for Respondent–Appellee.

Before: NORRIS and SUHRHEINRICH, Circuit Judges, and WEBER, District Judge.*

* The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

SUHRHEINRICH, Circuit Judge.

Petitioner, Dushon Hampton, appeals judgment denying his motion to vacate sentence filed pursuant to 28 U.S.C. § 2255. For the following reasons, we **VACATE** and **REMAND** for further proceedings.

## I.

On October 17, 1994, a grand jury in the Eastern District of Michigan returned a three count indictment against Petitioner, charging him with various federal firearms violations. Count One charged unlicensed dealing in firearms, in violation of 18 U.S.C. § 922(a), specifically the unlawful sale of twenty handguns to an undercover federal agent. Count Two charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Count Three charged possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). On December 12, 1994, Petitioner entered a plea of guilty to Count Two of the indictment. Pursuant to the plea agreement, the other two counts were dismissed. On April 2, 1996, this court affirmed his conviction. *See United States v. Hampton*, No. 95–1354, 1996 WL 153916 (6th Cir.1996).

The § 922(g) conviction was predicated on Petitioner's 1986 state conviction for attempted carrying of a concealed weapon in violation of Michigan Compiled Laws § 750.227. Petitioner does not contest that this was a felony conviction. *See* MICH. COMP. LAWS §§ 750.227, 750.92. For the 1986 conviction, Petitioner was sentenced to one year of probation for the predicate offense and was discharged from such probation on May 8, 1987.

## II.

Petitioner was sentenced to a term of 27 months on March 28, 1995. According to the Government, he was released from incarceration on April 2, 1997,

and completed his supervised release term on April 2, 1999. Petitioner filed his petition on October 4, 1996, while he was still incarcerated. Thus, although he is no longer imprisoned, Hampton has satisfied the "in custody" requirement. Where a prisoner's sentence is not fully expired at the time of filing, but expires during the litigation of the collateral attack, the proceeding does not become moot. *See Maleng v. Cook*, 490 U.S. 488, 491–92, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989); *Carafas v. LaVallee*, 391 U.S. 234, 237–38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir.1993).

## III.

The certificate of appealability order in this case certified this appeal based on "the issue of whether Petitioner's civil rights were restored for purposes of 18 U.S.C. § 921(a)(20)(B) upon completion of his probation stemming from his conviction in state court under MICH. COMP. LAWS § 750.227." Relying on *United States v. Driscoll*, 970 F.2d 1472 (6th Cir.1992), the district court found that Petitioner's civil rights were not so restored, but in raising the issue made a substantial showing of the denial of a constitutional right. By order, this court previously denied Petitioner's appeal for a certificate of appealability on any remaining issues. *Hampton v. United States*, No. 97–1782 (6th Cir. May 22, 1998).

Consistent with § 921(a)(20), Petitioner's earlier state conviction from 1986 was used as the basis for his subsequent charge that he violated § 922(g).[1] Section 922(g)(1) states that:

> [i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting com-

---

**1.** In *United States v. Turner,* 77 F.3d 887 (6th Cir.1996), this court held that § 922(g) is con-

stitutional as a proper exercise of Congress' authority under the Commerce Clause.

merce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Congress has, however, enacted an exception to this general rule turning on the definition of "conviction." Section 921(a)(20) provides that:

What constitutes a conviction of a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). In other words, if Petitioner's rights were restored at the time he was charged with a violation of § 922(g), he could not be guilty of the charge, having failed to meet the definition of "conviction." Here, pursuant to § 921(a)(20), this court looks to Michigan law to determine whether Petitioner was a convicted felon for purposes of section § 922(g)(1). The question turns on whether this court's 1992 decision in *Driscoll, supra*, is the controlling precedent in this circuit on the relevant Michigan law or whether the Michigan Court of Appeals 1994 decision in *Froede v. Holland Ladder & Mfg. Co.*, 207 Mich.App. 127, 523 N.W.2d 849 (1994), controls. Petitioner claims that *Froede* controls and that, as such, he cannot be guilty of a violation of § 922(g), thereby entitling him to relief under § 2255.

## IV.

■ Before reaching the merits of Petitioner's claim, we must consider whether his claim is defaulted. Petitioner plead guilty to the § 922(g) charge. He did not challenge his status as a felon for purposes of the charge on direct review. Petitioner raises that argument for the first time in these habeas corpus proceedings. As such, Petitioner's failure to challenge the validity of his plea on direct appeal causes his claim to be procedurally defaulted. In *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998), the Supreme Court explained that, in general, collateral attack on a guilty plea is precluded:

We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546–2547, 81 L.Ed.2d 437 (1984) (footnote omitted). And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and "'will not be allowed to do service for an appeal.'" *Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quoting *Sunal v. Large*, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590–1591, 91 L.Ed. 1982 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979). In this case, petitioner contested his sentence on appeal, but did not challenge the validity of his plea. In failing to do so, petitioner procedurally defaulted the claim he now presses on us.

*Id.*

However, the Court continued, explaining that a petitioner could maintain his habeas claims but only if he could first demonstrate either: (1) that "cause" and "actual prejudice" existed to excuse his failure to raise the issue on direct appeal; or (2) "if he can establish that the constitu-

tional error in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent.'" *Bousley,* 118 S.Ct. at 1611 (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). *See also Luster v. United States,* 168 F.3d 913, 914–15 (6th Cir.1999) (explaining *Bousley* standard). Although Petitioner is silent on the issue of procedural default, for purposes of the issue we construe his claim on the § 922(g) count as one that he is actually innocent of the charge.

Whether Petitioner can establish actual innocence on that count requires an analysis of the legal basis for Petitioner's collateral attack on the merits. If *Froede* controls, Petitioner is, indeed, actually innocent of the § 922(g) count. In other words, our determination of controlling Michigan law will determine whether the convicted felon element of § 922(g) is present and whether Petitioner is actually innocent of that portion of his original indictment.

## V.

■ To begin the analysis, this Court must determine whether the state law of Michigan had restored all or essentially all of the defendant's civil rights. Our focus is particularly placed on the three civil rights considered key by the Sixth Circuit—the right to vote, hold public office, and serve on a jury. *See Driscoll,* 970 F.2d at 1480 (determining that a "state restores the civil rights of felons if it allows them to vote, hold public office and serve on juries").

■ Here, "Michigan law provides no statutory or constitutional definition of when restoration [of a convicted felon's rights] occurs." *Lyons v. United States,* 794 F.Supp. 238, 240 (E.D.Mich.1992); *United States v. Butler,* 788 F.Supp. 944, 946 (E.D.Mich.1991). In fact, "Michigan does not have a general restoration statute." *United States v. Dahms,* 938 F.2d 131, 133 (9th Cir.1991). Although Michi-

gan does not have a general restoration statute, Petitioner became entitled under Michigan law to exercise his civil right to vote and hold public office once he was released from custody. *See Dahms,* 938 F.2d at 133–34 (holding that once incarceration ends, a convicted felon's right to vote and to hold public office is restored automatically by Michigan law); *United States v. Hammonds,* 786 F.Supp. 650, 667 (E.D.Mich.1992); *Butler,* 788 F.Supp. at 946–47. Moreover, Petitioner's right to possess firearms had been restored. MICH. COMP. LAWS Ann. §§ 28.422(3)(d) (West Supp.1999); 750.224f (West Supp. 1999). The Government, however, maintains that Michigan law did not restore to Petitioner the civil right to serve on juries because "Petitioner's right to serve on a criminal jury is restricted." *See United States v. Dupaquier,* 74 F.3d 615, 617 (5th Cir.1996). Specifically, the Court looks to Michigan law to determine whether Petitioner's civil rights were restored prior to his arrest. *See id.*

### A.

In *Driscoll,* 970 F.2d at 1478–79, this court held that Michigan law did not restore a convicted felon's civil rights upon his release from prison because, "Michigan does not restore the right of convicted felons to sit on a jury." The Court based its decision, in part, on Michigan Court Rule 2.511(D)(2) of Civil Procedure which allows convicted felons to be challenged for cause during jury selection. Rule 2.511(D)(2) states that "[t]he parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry. It is grounds for a challenge for cause that the person ... has been convicted of a felony." MICH. CT. R. 2.511(D)(2). According to the court, the Michigan Court Rules "have the force of law in Michigan" and "constitute a part of state law to be studied ... in determining whether ... [a

convicted felon's] rights have been restored." *Driscoll*, 970 F.2d at 1478.

The court then analyzed Michigan Court Rule 6.412(D) of Criminal Procedure which requires a court to excuse a juror whenever a challenge for cause clearly falls within one of the enumerated grounds set forth in Rule 2.511(D). More specifically, Rule 6.412, which governs criminal trials, adopts the challenges for cause included under Rule 2.511(D) and provides that "[i]f, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." MICH. CT. R. 6.412(D)(1) and (2). Thus, "a felon may not sit on a [criminal] jury if his status is challenged." *Driscoll*, 970 F.2d at 1479.

Upon reviewing Rules 2.511(D) and 6.412(D), the court concluded that Michigan law had not restored the defendant's right to serve on a jury. *Driscoll*, 970 F.2d at 1479. The court stated the following:

> As we read Michigan law, ... [the defendant, a convicted felon,] would be automatically dismissed from jury service once either party brought his former conviction to the attention of the court in either a civil or criminal case. Furthermore, in a criminal case, Michigan court rules recommend that the trial court dismiss convicted felons on its own motion. While the trial court generally must decide whether the challenged person falls within a certain category, such a determination is not needed for convicted felons. As Judge Woods noted in *United States v. Butler*, 788 F.Supp. 944, 947 (E.D.Mich.1991), "A person either has been convicted of a felony or he has not. Once it is established that he has, the Michigan courts may not permit him to sit on a jury."

*Driscoll*, 970 F.2d at 1479.

In doing so, this court rejected an earlier interpretation of Michigan law adopted by the Ninth Circuit. In *United States v.*

*Dahms*, 938 F.2d 131 (9th Cir.1991), the court referred to section 600.1307a of the Michigan Compiled Laws, which revoked a felon's right to be a juror while serving his sentence, and held that "[o]nce incarceration ended ... [a convicted felon's right to serve on a jury was] restored automatically by the force of the very [Michigan] laws" that suspended this right upon his incarceration. *Id.* at 134. The dissent in *Driscoll* agreed with the Ninth Circuit's conclusion. *See Driscoll*, 970 F.2d at 1487 (Jones, J., dissenting).

Several unpublished decisions within this Circuit prior to 1994 reaffirmed the holding in *Driscoll*. *See, e.g., Hudgins v. United States*, No. 91–2108, 1993 WL 20172 (6th Cir. Jan.28, 1993); *United States v. Rizzo*, No. 92–1764, 1993 WL 5905 (6th Cir. Jan.13, 1993); *United States v. Cholak*, No. 92–1494, 1993 WL 2819 (6th Cir. Jan.7, 1993); *United States v. Gilliam*, No. 91–2417, 1992 WL 322035 (6th Cir. Nov.10, 1992); *United States v. Kaplan*, No. 91–2003, 1992 WL 168100 (6th Cir. July 17, 1992). The Fourth Circuit similarly relied on *Driscoll* during this period. *See United States v. Metzger*, 3 F.3d 756, 759 (4th Cir.1993).

### B.

*Froede v. Holland Ladder & Mfg. Co.*, 207 Mich.App. 127, 523 N.W.2d 849 (1994), was decided by a panel of the Michigan Court of Appeals on October 3, 1994. In *Froede*, the Michigan court held that "a former felon's right to serve as a juror [wa]s restored once the sentence [wa]s completed" because section 600.1307a(1)(e) "only requires that a potential juror not be under sentence for a felony at the time of jury selection and because juror qualifications are a matter of legislative control[.]" *Id.* at 852.

The court then examined "whether a trial court ha[d] discretion to retain a convicted felon on a civil jury where a party challenges that juror for cause" under

Rule 2.511(D)(1) or (D)(2). The court concluded the following:

> Consistent with our holding that a convicted felon's right to serve as a juror is restored upon completion of the sentence, we further hold that where a challenge for cause is timely made under MCR 2.511(D)(1) or (D)(2) and it is established that the juror does not satisfy one or more of the prerequisites under ... [section 600.1307a], the trial court must excuse the challenged juror.

*Froede*, 523 N.W.2d at 852. Despite this narrow limitation on a convicted felon's right to serve on a civil jury, the court clearly expressed its disagreement with the line of federal cases, including *Driscoll*, that have interpreted Rule 2.511(D)(2) and section 600.1307a(1)(e). *See Froede*, 523 N.W.2d at 851.

### C.

In two unpublished opinions issued after *Froede*, this Circuit has applied *Driscoll's* holding that Michigan law does not fully restore a convicted felon's civil rights for purposes of § 922(g) because a Michigan felon is restricted from serving on a jury. *See United States v. Gilliam*, No. 94–1855, 1996 WL 272392 (6th Cir. May 20, 1996) (unpublished per curiam); *United States v. Reiche*, No. 94–1071, 1995 WL 6242 (6th Cir. Jan.5, 1995) (unpublished per curiam). *See also United States v. Estrella*, 104 F.3d 3 (1st Cir.1997) (citing the position of *Driscoll* and *Metzger* on Michigan's restoration of a felon's right to sit on a jury). Neither Sixth Circuit panel mentions *Froede*. Both, however, adopt *Driscoll* by noting that one panel of this court cannot overrule another panel's published decision on the same issue. *See United States v. Edge*, 989 F.2d 871, 876 (6th Cir.1993) (precluding one panel from ruling contrary to another).

Recently, two district courts outside the Sixth Circuit, however, have found that *Froede* rather than *Driscoll* is the controlling interpretation of Michigan law. *See United States v. Bolton*, 32 F.Supp.2d 461 (S.D.Texas 1999); *United States v. Tait*, 54 F.Supp.2d 1100 (S.D.Ala.1999).

■ Because *Froede* came after *Driscoll*, a case decided when there was little guidance on the issue from Michigan courts, this panel should not be restricted by the rule prohibiting one panel from overruling another. The rule is not absolute. As a recent case held, "[t]his panel cannot [reconsider a previous panel decision], however, absent an indication from the Tennessee courts that they would have decided [the prior decision] differently." *Blaine Construction Corp. v. Ins. Co. of North America*, 171 F.3d 343, 350–51 (6th Cir.1999). The negative implication of this holding is that this panel may reconsider *Driscoll* because the Michigan courts have expressly indicated, through *Froede*, that they disagree with *Driscoll* and would have decided it differently.

■ Generally, in order to analyze a conflict between a federal interpretation of state law and a subsequent determination by an intermediate state court:

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise[.]

*Hicks v. Feiock*, 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) (quoting *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237–38, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). Thus, in the absence of any persuasive data that the Michigan Supreme Court would decide that a convicted felon's right to serve on a jury is not restored upon the completion of his sentence, this Court is "not at liberty to depart from the state appellate court's resolution" of this issue of state law. *Id.* at 629, 108 S.Ct. 1423.

The Michigan Supreme Court has never addressed the issue.[2] There does not appear to be evidence that the Michigan Supreme Court would decide contrary to *Froede.* The closest this Circuit has come to addressing the conflict was in a conclusory statement in an unpublished analysis of *People v. Legrone,* 205 Mich.App. 77, 517 N.W.2d 270 (1994), the case where the Michigan Court of Appeals upheld the seating of a juror who had been convicted of a felony. In *Reiche,* the panel stated that, "*Legrone* does not alter our analysis, however, because it does not address all the issues in *Driscoll* and it is not clear that the Michigan Supreme Court would reach the same result." *Reiche,* 1995 WL 6242, *3 n. 1. First, because *Legrone* did not address directly the issue in this case, the comment on *Legrone* is not controlling.[3] Second, as an unpublished comment, it is also not controlling. But most importantly, the comment seems to reverse the presumption. Under *Hicks,* it is not whether its clear the Michigan Supreme Court would reach the same result. Instead, the court should presume the Michigan Supreme Court would agree unless its clear the Michigan Supreme Court would likely disagree with the Michigan Court of Appeals. *Hicks,* 485 U.S. at 630 n. 3, 108 S.Ct. 1423.

In fact, this Circuit has adopted a test for Michigan law that requires this panel to accept *Froede:*

> The Michigan Supreme Court has not considered the question ... In order to determine the Michigan law, we thus turn to the decisions of the Michigan intermediate courts, which are binding authority in federal courts in the ab-

sence of any Michigan Supreme Court precedent. *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940); *Woodruff v. Tomlin,* 616 F.2d 924 (6th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980). The law of Michigan is controlled by a decision of the Michigan Court of Appeals until the Michigan Supreme Court or another panel of the Michigan Court of Appeals rules otherwise. *In re Hague,* 412 Mich. 532, 552, 315 N.W.2d 524 (1982); *People v. McDaniels,* 70 Mich.App. 469, 473, 245 N.W.2d 793 (1976); *Hackett v. Ferndale City Clerk,* 1 Mich.App. 6, 11, 133 N.W.2d 221 (1965).

*Wieczorek v. Volkswagenwerk,* 731 F.2d 309, 310 (6th Cir.1984). The Michigan Supreme Court is silent but the Michigan Court of Appeals has spoken. That should end the matter. Even if it did not, there is no indication under the *Hicks* test that Michigan's Supreme Court would overrule *Froede.*

■ Without such indication, we are forced to conclude that Michigan restores a felon's right to sit on a jury upon completion of his sentence. *Froede,* 523 N.W.2d at 852. We find that the Michigan Court of Appeals decision in *Froede* controls and, until or unless the Michigan Supreme Court decides otherwise, or in some other way casts sufficient doubt on that decision, we must abandon our interpretation of Michigan law previously recognized in *Driscoll.*

■ Thus, all of Petitioner's key rights were restored at the time he was charged

---

**2.** The subsequent appeal of the Michigan court's decision in *Froede* was denied, *Froede v. Holland Ladder & Mfg. Co.,* 451 Mich. 874, 549 N.W.2d 565 (1996), and reconsideration of that decision was denied by *Froede v. Holland Ladder & Mfg. Co.,* 453 Mich. 901, 554 N.W.2d 319 (1996).

**3.** *Legrone* is, however, similar evidence of Michigan law. The Michigan Court of Appeals in *Legrone* upheld the conviction of a

defendant where a juror who had been convicted of a felony was allowed to remain on the jury after she had been challenged for cause by the prosecutor. The court held that the trial judge had discretion to deny the challenge and, in any event, that the defendant had waived the issue when he expressed satisfaction with the jury even though he had peremptory challenges remaining.

with a violation of § 922(g). Because his rights were so restored from the 1986 conviction, it appears that Petitioner plead guilty to a charge to which he was actually innocent because the Government could not satisfy all of the elements of the § 922(g) charge. By making such a showing, Petitioner is entitled to have his defaulted claim reviewed on collateral attack.

*Bousley* makes clear that, for one who contests a guilty plea in a collateral proceeding, establishing "actual innocence" requires a showing of "factual innocence, not mere legal insufficiency." *Bousley*, 118 S.Ct. at 1611. As the Supreme Court has stated, "the Government is not limited to the existing record to rebut any showing that petitioner might make, and on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before" our decision here today. *Id.* at 1612.

In light of our ruling today, the case will be remanded to allow Petitioner to establish actual innocence. Because Petitioner's right to sit on a jury was restored when charged, nothing on the current record indicates that the government can establish guilt on the § 922(g) charge. If this were the end of the inquiry, Petitioner would be entitled to the relief requested and we would grant the writ of habeas corpus and vacate his original plea agreement.[4] However, establishing actual innocence on the § 922(g) charge alone is insufficient to grant the relief requested.

"In cases where the government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must extend to those charges." *Id.* Petitioner must establish that he is actually innocent of

Counts I and III of the indictment filed in this case but dismissed in consideration for the plea of guilty to Count II, the § 922(g) violation. Although we hold that the case on Count II was factually and legally insufficient on this record, this holding will entitle Petitioner to no relief without a subsequent showing of actual innocence on the forgone counts of the indictment.

## VI.

Accordingly, we **VACATE** the denial of the petition for a writ of habeas corpus and **REMAND** the case to the district court for further proceedings consistent with this opinion to allow Petitioner the opportunity to make a showing of actual innocence on all charges presented in the indictment.

---

4. If this court were to vacate Petitioner's conviction, the plea agreement would be vacated and the Government would be allowed to

reinstate Counts One and Three of the original indictment. *See United States v. Lewis,* 138 F.3d 840, 842 (10th Cir.1998).