**UNITED STATES of America,
Plaintiff,**

v.

**Ronald John WEGRZYN, Defendant.**

**No. 1:99–CR–210.**

United States District Court,
W.D. Michigan,
Southern Division.

May 26, 2000.

---

**960**

Paul L. Nelson, Federal Public Defender, Grand Rapids, MI, for Ronald John Wegrzyn.

Timothy P. VerHey, U.S. Attorney's Office, Western District of Michigan, Grand Rapids, MI, for U.S.

*OPINION*

QUIST, District Judge.

### Introduction

Recently, with much publicity, Congress made it a crime for a person who had been "convicted" of a misdemeanor crime of domestic violence to possess a firearm. *See* 18 U.S.C. § 922(g)(9). At the same time, Congress also provided that in the unusual circumstance where a state takes away a misdemeanant's civil rights and later restores them, there is no "conviction" and, consequently, no violation of § 922(g)(9). *See* 18 U.S.C. § 921(a)(33)(B)(ii). In this case, the Court is called upon to decide whether a Michigan statute, which deprives incarcerated misdemeanants of their right to vote and restores them upon release, comes within the scope of § 921(a)(33)(B)(ii). As noted in *Fraternal Order of Police v. United States*, 173 F.3d 898 (D.C.Cir.1999), § 921(a)(33)(B)(ii) has many anomalies which require "a detailed analysis of applicable state law and its interaction with federal law." *Id.* At 904. After conducting its own detailed analysis of the relationship between the Michigan statute and § 921(a)(33)(B)(ii), the Court concludes that Michigan law excludes persons who commit misdemeanor crimes of domestic violence from prosecution under § 922(g)(9).

### Discussion

Defendant, Ronald Wegrzyn ("Wegrzyn") is charged with violating 18 U.S.C. § 922(g)(9), which provides that

It shall be unlawful for any person—

\*   \*   \*   \*   \*   \*

(9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The predicate "misdemeanor crime of domestic violence" for the § 922(g)(9) charge occurred on March 13, 1996, when Wegrzyn was convicted of a charge of domestic violence in violation of M.C.L. § 750.81(2). Wegrzyn was sentenced to a term of 6 to 12 months probation. After completing his probation, Wegrzyn was discharged on December 3, 1996.

The issue before the Court is whether Wegrzyn's conviction comes within the exception in 18 U.S.C. § 921(a)(33)(B)(ii) for offenses under § 922(g)(9), § 921(a)(33)(B)(ii) states:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(33)(B)(ii). The Court's resolution of the issue involves two distinct inquiries: (i) whether the law of the state of Michigan "provides for the loss [and restoration] of civil rights" for a conviction for a "misdemeanor crime of domestic violence"; and (ii) if civil rights are subject to loss and restoration, whether a defendant who does not actually lose them should be treated the same as a defendant who actually lost his civil rights and had them restored.

■ In conducting its analysis of whether the § 921(a)(33)(B)(ii) exception applies in this case, the Court begins with two observations. First, the Court must look to Michigan law to determine whether a conviction for a "misdemeanor crime of domestic violence" results in the loss and restoration of civil rights under § 921(a)(33)(B)(ii). *See* 18 U.S.C. § 921(a)(33)(B)(ii); *Hampton v. United States*, 191 F.3d 695, 699 (6th Cir.1999);

*United States v. Cassidy*, 899 F.2d 543, 546 (6th Cir.1990). Second, the "civil rights" included within § 921(a)(33)(B)(ii) are "the three civil rights considered key by the Sixth Circuit—the right to vote, hold public office, and serve on a jury." *Hampton*, 191 F.3d at 699.

1. ***Michigan law "provides for the loss of civil rights" for conviction of a misdemeanor crime of domestic violence and also for the restoration of those rights.***

■ Wegrzyn and the Government agree that a defendant convicted of a misdemeanor crime of domestic violence under Michigan law does not lose his rights to hold public office or serve on a jury. However, as the Court noted in its April 26, 2000, Order, M.C.L. § 168.758b deprives both misdemeanants and felons of the right to vote upon incarceration. Under that statute,

> [a] person who … has been legally convicted and sentenced for a crime for which the penalty imposed is confinement in jail or prison shall not vote, offer to vote, attempt to vote, or be permitted to vote at an election while confined.

M.C.L. § 168.758b. The predicate offense on which the instant charge is based is a violation of M.C.L. § 750.81, which provides for a term of imprisonment for not more than 93 days. *See* M.C.L. § 750.81(2). Thus, a defendant convicted of violating M.C.L. § 750.81(2) and sentenced to time in jail loses his right to vote upon being incarcerated. However, the right to vote is automatically restored upon release from confinement.

In *Hampton*, the Sixth Circuit held that under Michigan law a felon who had served his time on probation had all of his civil rights automatically restored upon the completion of his sentence. Thus, held *Hampton*, this felon could not be considered a "convicted" felon in possession under 18 U.S.C. § 922(g)(1). For purposes

of the legal issue considered in this Opinion, the circumstances in *Hampton* are sufficiently analogous to those in this case to warrant the same result—in Michigan, a misdemeanant convicted of domestic violence, like Wegrzyn, and the felon defendant in *Hampton* are subject to "the loss of civil rights" and the automatic restoration of civil rights upon release from custody.[1] *See Hampton*, 191 F.3d at 702–03; *accord, Cassidy*, 899 F.2d at 549 (automatic restoration of rights suffices for "restoration" under § 921(a)(20)).

In its supplemental brief, the Government raises three arguments in support of its contention that loss and restoration of voting rights pursuant to M.C.L. § 168.758b does not trigger § 921(a)(33)(B)(ii). The Court will address each argument in the order presented by the Government.

First, the Government argues that if M.C.L. § 168.758b is deemed to satisfy the requirement of loss and restoration of civil rights under § 921(a)(33)(B)(ii), no conviction for a misdemeanor crime of domestic violence under Michigan law will ever qualify as a predicate offense under § 922(g)(9) because all such offenses are subject to the possibility of a jail term and, consequently, loss of voting rights. The Government contends that such a result would be contrary to Congress' intent to enact a broad prohibition on gun ownership by persons convicted of domestic assault. The Government urges that "[i]f at all possible, the Gun Control Act should be construed in a way that avoids excluding the State of Michigan from its scope." (Gov't Supp'l Br. at 3.)

This argument would also apply to felons who have been convicted in Michigan for purposes of 18 U.S.C. §§ 921(a)(20). Nonetheless, as stated previously, in *Hampton*, the Sixth Circuit held that once a felon in Michigan serves his time, his core civil rights are automatically restored. *See Hampton*, 191 F.3d at 702–03. In addition, this argument ignores the fact that after the Supreme Court decided *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (holding that the definition of "convicted ... [is] a question of federal, not state, law ... for desirable national uniformity"), Congress specifically amended the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 226 (1968) (as amended by the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1214 (1968)), with the Firearm Owners' Protection Act, Pub.L. 99–308, 100 Stat. 449 (1986) to allow state law to define a predicate "conviction" for purposes of the federal felon in possession statute. *See* 18 U.S.C. § 921(a)(20); *Cassidy*, 899 F.2d at 547. The same type of deference to the patchwork-quilt of state law for definition of "convicted" is carried over into § 921(a)(33)(B)(ii). Thus, it is Congress and not this Court that would exclude the State of Michigan from the scope of § 922(g)(9).

More importantly, however, this argument ignores one of the primary rules of statutory construction, which is to consider and give effect to all parts of a statute in order to carry out the legislature's intent. *See Bennett v. Spear*, 520 U.S. 154, 173, 117 S.Ct. 1154, 1166, 137 L.Ed.2d 281 (1997); *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974). In other words, by urging the Court to focus exclusively on Congress' general intent in enacting § 922(g)(9), the Government would have this Court ignore the plain language of § 921(a)(33)(B)(ii). That provision indicates that while Congress was aware that in most states per-

---

1. Even if a person's general civil rights have been restored, firearms possession is nevertheless forbidden by § 922(g) if state law imposes any sort of restriction upon possession of firearms. *See Caron v. United States*, 524 U.S. 308, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998). Michigan does prohibit certain felons from possessing firearms for limited periods of time. *See* M.C.L.A. § 750.224(f). However, neither party has advised the Court of a comparable provision for misdemeanants convicted of crimes of domestic violence in Michigan.

sons convicted of misdemeanor offenses do not lose their civil rights, Congress allowed for the possibility that some states may actually strip misdemeanants of their civil rights. Hence, the parenthetical stating, "(if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)". 18 U.S.C. § 921(a)(33)(B)(ii). This construction is supported by the comments of Senator Lautenberg, the chief sponsor of the legislation:

> Mr. President, another new provision in the final agreement clarifies that a conviction will not lead to a firearm disability if the conviction has been expunged or set aside, or is for an offense for which the person has been pardoned or has had civil rights restored. This language mirrors similar language in current law that applies to those convicted of felonies.

> I would note that the language on civil rights restoration, as it has been applied in the past, and as it should be interpreted in the future, refers only to major civil rights, such as the right to vote, to hold public office, and to serve on a jury. *Loss of these rights generally does not flow from a misdemeanor conviction, and so this language is probably irrelevant to most, if not all, of those offenders covered because of the new ban* . . . .

142 Cong. Rec. S11877–78 (1996) (statement of Sen. Lautenberg) (emphasis added). Thus, Congress expressly contemplated the situation where a conviction for a misdemeanor crime of domestic violence may be outside the scope of § 922(g)(9) because the state's law provides for the loss and restoration of a misdemeanant's civil rights.

The Government next argues that the loss of voting rights under M.C.L. § 168.758b is not a loss of civil rights as

envisioned under § 921(a)(33)(B)(ii) because M.C.L. § 168.758b does not serve as a means of punishment, but rather as a means to prevent a large block of prisoners from combining to deprive the local community from determining its own political affairs. The Court rejects this argument for two reasons. First, the Government has not cited any support, such as legislative history, to show the purpose of the statute. Second, and more importantly, the Sixth Circuit and district courts in this state have relied on M.C.L. § 168.758b in holding that felons lose and regain the right to vote under Michigan law for purposes of the felon in possession statute. *See Hampton*, 191 F.3d at 699 (citing *United States v. Dahms*, 938 F.2d 131, 133–34 (9th Cir.1991))[2]; *United States v. Hammonds*, 786 F.Supp. 650, 667 & 667 n. 17 (E.D.Mich.1992). Because the Court finds no basis for treating the restoration of civil rights provision under § 921(a)(33)(B)(ii) any differently than the similar provision under § 921(a)(20) for felons in possession, the Court rejects the Government's argument that loss and restoration of voting rights under § 168.758b should not be considered under § 921(a)(33)(B)(ii).

As a final note, the Sixth Circuit has held that the loss and restoration of civil rights need not have resulted from action of the state directed specifically at the defendant. *See Cassidy*, 899 F.2d at 549. Rather, it is sufficient if a defendant's civil rights have been automatically revoked and restored by operation of a general statute without the necessity of "individualized action." Thus, a court "must look to the whole of state law of the state of conviction to determine whether the [defendant] is entitled to vote, hold public office and serve on a jury . . . ." *Id.*

The Government's final argument with respect to the issue of whether the loss of

---

**2.** The *Hampton* court did not cite M.C.L. § 168.758b, but instead cited the Ninth Circuit's decision in *Dahms* for the proposition that the petitioner became entitled to vote once he was released from custody. *See Hampton*, 191 F.3d at 699. *Dahms*, in turn,

cited § 168.758b as support for its conclusion that a felon's right to vote under Michigan law is suspended upon incarceration and restored automatically upon release. *See Dahms*, 938 F.2d at 133–34 n. 1.

voting rights under M.C.L. § 168.758b triggers the § 921(a)(33)(B)(ii) exception is that the loss of only a single civil right is not enough to satisfy the statute. The Government contends that this argument finds support in the statute, which requires the loss of "civil rights" as opposed to a single "civil right." However, the Court does not read the statute as narrowly as the Government. The statute speaks in terms of restored civil rights but does not identify which or how many rights must be taken away and restored to qualify for the exception. The determination of those rights has been a matter for the courts, which, as noted above, have defined them to include the three core rights—the right to vote, the right to serve on a jury, and the right to hold public office.

The only case the Government cites in support of its position is the Sixth Circuit's decision in *Cassidy*. In that case, after reviewing the legislative history of the civil rights restoration provision for the felon in possession statute, the court found that while "Congress envisioned a restoration of more than a *de minimis* quantity of civil rights" it did not intend that a " 'full' restoration of rights" was necessary. *Cassidy*, 899 F.2d at 549. The Court does not read *Cassidy* as requiring the loss and restoration of all three core civil rights in order to qualify for either of the exemptions in § 921(a)(20) or § 921(a)(33)(B)(ii). Each of the three core rights is substantial, so that the loss of any of them, either alone or in combination with one another, is not *de minimis*. Furthermore, after the Sixth Circuit's decisions in *Hampton* and *United States v. Driscoll*, 970 F.2d 1472 (6th Cir. 1992), it is clear that the loss of a single civil right will bar firearms use.

**2. *A defendant who faces the possibility of losing civil rights but does not actually lose them should be treated the same as a defendant who actually lost his civil rights and had them restored.***

■ Having found that the loss and restoration of voting rights pursuant to M.C.L. § 168.758b satisfies the civil rights restoration exception in § 921(a)(33)(B)(ii), the Court must now consider whether a defendant such as Wegrzyn, who is convicted of a misdemeanor crime of domestic violence but is not sentenced to time in jail and, therefore, does not actually lose his civil rights, should be considered as having his civil rights taken away and restored for purposes of § 921(a)(33)(B)(ii). The Court concludes that under such circumstances the requirement under § 921(a)(33)(B)(ii) that civil rights be lost and restored is satisfied.

In *United States v. Indelicato*, 97 F.3d 627 (1st Cir.1996), the First Circuit held that a defendant whose civil rights were never taken away should be treated the same as a defendant whose civil rights were taken away and restored. *See Indelicato*, 97 F.3d at 631. Employing the same analysis used in *Cassidy*, i.e., that a loss of civil rights may result automatically from a statute of general application, the court reasoned, "[i]f individualized action is not required, it is hard to see why Congress would wish to distinguish between one whose civil rights were never taken away (Indelicato) and one whose civil rights were mechanically taken away and mechanically restored." *Id.* at 630. The court noted that its holding was consistent with decisions by most of the other circuits, including the Sixth Circuit. *See id.* Significantly, in reaching its holding, the court quoted the Sixth Circuit's observation in *Cassidy*, that

There is no rational basis, particularly in light of the legislative history, for distinguishing between civil rights possessed by a felon after his release that were not expressly taken away, and those civil rights which were negated, by statute or otherwise, upon conviction or incarceration and then reinstated after his release.

*Indelicato*, 97 F.3d at 629 (quoting *Cassidy*, 899 F.2d at 549 n. 13). Although the

footnote in *Cassidy* was not part of or even necessary to the court's holding, in *Hampton*, a more recent case, the Sixth Circuit implicitly accepted *Cassidy's* reasoning. *See Hampton*, 191 F.3d at 697, 699, 702 (noting that the defendant, who received probation for the underlying offense, "became entitled under Michigan law to vote and hold public office once he was released from custody" or "upon completion of his sentence.").

The Government cites *McGrath v. United States*, 60 F.3d 1005 (2d Cir.1995) as support for its position that § 921(a)(33)(B)(ii) can apply only if a defendant's rights were actually taken away and restored. In *McGrath*, the Second Circuit rejected the petitioner's argument that his conviction under the felon in possession statute was invalid. The predicate offense was the petitioner's conviction for larceny in Vermont. The petitioner was given a suspended sentence and placed on probation. Because the petitioner was never incarcerated, he did not lose any of his civil rights under Vermont law. The petitioner argued that his conviction was invalid because, although he did not actually lose his civil rights, he should be treated the same as someone who lost and regained his civil rights. The court rejected the argument, noting that if Congress had intended such a result, it could have provided an exemption to those such as the petitioner who never lost their civil rights. *See McGrath*, 60 F.3d at 1008.

The *McGrath* court relied in large part upon the First Circuit's decision in *United States v. Ramos*, 961 F.2d 1003 (1st Cir. 1992). However, in *Indelicato*, the First Circuit rejected *Ramos* and its rationale when it adopted the view expressed by the Sixth Circuit in *Cassidy* that a defendant who does not lose civil rights should be treated the same as a defendant who loses civil rights which are later restored.

Thus, the precedential underpinning supporting *McGrath's* conclusion has collapsed.

As stated by the First Circuit in *Indelicato*, the Sixth Circuit's view is contrary to that of the Second Circuit in *McGrath*. *See Indelicato*, 97 F.3d at 630. Because this Court is bound to follow the law of the Sixth Circuit, the Court finds that the Sixth Circuit's position is consistent with the First Circuit's decision in *Indelicato* as indicated in *Cassidy* and *Hampton* and is inconsistent with *McGrath*. Therefore, the Government's reliance on *McGrath* is improper.

The question remains, however, whether the rationale of *Cassidy* and *Indelicato* should apply in this case where the predicate offense is based upon a misdemeanor conviction. The Government argues that the *Cassidy* and *Indelicato* rationale, interpreting 18 U.S.C. § 921(a)(20), cannot be transferred to § 921(a)(33)(B)(ii) because individuals convicted of misdemeanors generally do not lose their civil rights. Therefore, allowing the same result in cases under § 922(g)(9) would eviscerate the statute because no misdemeanor conviction of domestic violence would ever qualify as a predicate offense for § 922(g)(9). Thus, the Government continues to argue, as it did at oral argument, that the plain text of the statute puts misdemeanants who never lost their rights in a worse situation than felons whose rights are restored even by automatic operation of state law.[3]

*United States v. Smith*, 171 F.3d 617 (8th Cir.1999), postulated that a problem could be created by applying the *Indelicato* rationale to § 921(a)(33)(B)(ii). The court said that "to apply such a fiction to § 922(g)(9), aimed at misdemeanors, would be to vitiate the statute because most mis-

---

**3.** This argument defies the usual goal of criminal sanctions to impose the greater disability on the greater criminal act. The Government would have the person who committed the more grievous criminal act and is sentenced to jail (e.g., battering a spouse) suffer a lesser federal disability than the person who committed the lesser criminal act and received no jail time (e.g., verbally assaulting a spouse).

demeanor convictions do not result in the loss of civil rights." *Smith,* 171 F.3d at 623–24. *Smith* said that the result reached by *Indelicato* is not permissible under § 921(a)(33)(B)(ii) because of the parenthetical language "(if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)", which is not included in § 921(a)(20). *See id.* at 623.

*Smith,* which concerned Iowa law, is not on point with Wegrzyn's case for one very basic reason: an individual convicted of a misdemeanor in Iowa is not stripped of his civil rights, whereas an individual convicted of a misdemeanor in Michigan and sentenced to time in jail loses the right to vote, which is restored upon release from confinement. The *Smith* court was not addressing a situation where state law provided for the loss and restoration of civil rights. In this case, a Michigan misdemeanant is subject to the loss and restoration of one of his core civil rights. Therefore, in the words of 18 U.S.C. § 921(a)(33)(B)(ii), "the law of [Michigan] provides for the loss of civil rights under such an offense." Under these circumstances, there is no sound reason for not applying the *Cassidy* and *Indelicato* rationale to Wegrzyn.

### Conclusion

For the foregoing reasons, this Court concludes that Wegrzyn cannot be charged with violating 18 U.S.C. § 922(g)(9) and that the information must be dismissed.

Mr. Wegrzyn shall be released from custody forthwith.

An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion entered on this date,

**IT IS HEREBY ORDERED** that the plea entered by Defendant on January 31, 2000, and the plea agreement between Defendant and the Government are **VACAT-**ED and the information filed against Defendant is **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendant be released from federal custody forthwith.