*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0346P (6th Cir.)
File Name: 02a0346p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

  *v.*

RONALD JOHN WEGRZYN,
  *Defendant-Appellee.*

No. 00-1712

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00210—Gordon J. Quist, District Judge.

Argued: April 25, 2002

Decided and Filed: October 3, 2002

Before: DAUGHTREY and MOORE, Circuit Judges;
ECONOMUS, District Judge.*

---

## COUNSEL

**ARGUED:** Timothy P. Verhey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant. Paul L. Nelson, FEDERAL PUBLIC

---

* The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Timothy P. Verhey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant.   Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellee.

——————————

## OPINION

——————————

MARTHA CRAIG DAUGHTREY, Circuit Judge.  In this appeal by the government, we are asked to resolve what appears to be a misfit between state and federal law involving the regulation of firearms in the possession of persons found guilty of domestic violence.  Because we find the dilemma unresolvable in light of the relevant provisions in Michigan law and our cases interpreting them, we are compelled to affirm the judgment of the district court, which held that defendant Ronald Wegrzyn's conviction under 18 U.S.C. § 922(g)(9) cannot stand.  *See United States v. Wegrzyn*, 106 F. Supp.2d 959 (W.D. Mich. 2000).

The case comes to us in a somewhat unusual procedural posture.  Following his arrest for possession of a firearm after previously being convicted for a misdemeanor crime of domestic violence, in violation of § 922(g)(9), Wegrzyn agreed to a unique plea arrangement with the federal prosecutors.   Because of the existence of "extenuating circumstances" in the case, the parties asked the court to take the defendant's plea of guilty to the weapons charge under advisement for a period of 18 months.  Pursuant to the plea bargain, the district judge agreed that he would reject the plea after 18 months if the defendant had complied with all imposed conditions of his release.   Furthermore, the government agreed to move at that point for dismissal of the charges against Wegrzyn. Unfortunately, the defendant failed to live up to his end of the bargain and, as a result, the government sought revocation of the grace period and timely sentencing on the underlying offense.  Instead of granting the

from convicted misdemeanants, we are -- reluctantly -- forced to conclude that, upon successful completion of his probationary sentence, Ronald Wegrzyn is no longer considered ineligible to possess a firearm under the provisions of 18 U.S.C. § 922(g)(9).  The judgment of the district court in this matter is, therefore, AFFIRMED.

to sacrifice some of its collective security only because of the state legislature's decision to impose -- in one aspect, at least -- the same penalty to *all* persons convicted of offenses against the state, regardless of the seriousness of the charge.

In an attempt to circumvent this result, the government also argues that loss of voting rights under M.C.L.A. § 168.758b is not a loss of civil rights as contemplated by 18 U.S.C. 921(a)(33)(B)(ii). However, in *Hampton*, 191 F.3d at 699, we have already relied upon M.C.L.A. § 168.758b in noting that Michigan law provides for the loss and the later regaining of the right to vote for purposes of the federal felon-in-possession statute. We see no legitimate reason to abandon that view now in this instance.

Finally, the government contends that because 18 U.S.C. § 921(a)(33)(B)(ii) refers to a criminal defendant's loss of civil *rights*, the loss of only a single one of the major civil rights of voting, serving on a jury, and holding public office is not sufficient to trigger application of that provision. Again, our decision in *Hampton* forecloses the result in this case. In *Hampton*, the loss of only a single civil right was considered sufficient to bar firearms use. It seems apparent that the same rule must apply here.

As a result, in light of Congress's deference to states' treatment of the disabilities associated with criminal convictions, and Michigan's own stripping of the right to vote

---

*conviction, and so this language is probably irrelevant to most, if not all, of those offenders covered because of the new ban . . . .*

142 Cong. Rec. S11877-78 (1996) (statement of Sen. Lautenberg) (emphasis added). Thus Congress expressly contemplated the situation where a conviction for a misdemeanor crime of domestic violence may be outside the scope of § 922(g)(9) because the state's law provides for the loss and restoration of a misdemeanant's civil rights.

*Wegrzyn*, 106 F.Supp.2d at 962-63.

---

request of the assistant United States attorney, however, the district judge expressed his concern about the legal basis for the firearms conviction and eventually ruled that the federal conviction could not stand. Consequently, the court vacated the guilty plea and ordered Wegrzyn released from custody immediately.

In reaching his conclusion in this matter, the district judge recognized that the statutory provision in § 922(g)(9) that prohibits possession of a firearm by any person "who has been convicted in any court of a misdemeanor crime of domestic violence" is not absolute. Rather, the court noted, the prohibition is subject to certain limited exceptions listed in 18 U.S.C. § 921(a)(33)(B)(ii), which provides:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned *or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)* unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

*Id.* (emphasis added).

Relevant to this appeal is the unusual impact of M.C.L.A. § 168.758b, which strips from *misdemeanants* their core civil right to vote only "while confined" in a correctional facility.[1] Thus, a person confined in Michigan for misdemeanor domestic violence, a crime punishable by incarceration for up

---

[1] In relevant part, M.C.L.A. § 168.748b provides:

A person who . . . has been legally convicted and sentenced for a crime for which the penalty imposed is confinement in jail or prison shall not vote, offer to vote, or be permitted to vote at an election while confined.

to 93 days, *see* M.C.L.A. § 750.81(2), would have his or her civil rights restored immediately upon release, by operation of law, and would, therefore, be exempt from the prohibitions of 18 U.S.C. § 922(g)(9).

For the reasons articulated by this court in *United States v. Cassidy*, 899 F.2d 543 (6th Cir. 1990), and *Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999),[2] the district court further determined that misdemeanants convicted of domestic violence in Michigan who were *not* sentenced to periods of incarceration should also be able to possess firearms upon completion of their sentences of probation or other punishments. Otherwise, noted the district court, the untenable situation would occur in which an individual who presumably committed a more egregious offense justifying incarceration would nevertheless be allowed -- upon completion of the jail sentence -- to possess a firearm, while another misdemeanant whose transgression did not merit such severe punishment would be treated more harshly at the conclusion of a more lenient punishment.

On appeal, the government contends that the district court's analysis both ignores the plain language of the controlling statutes and compels an "absurd result" at odds with the clear intent of Congress and of the Michigan legislature. In fact, however, the district court's ruling in this matter actually gives effect to the exception crafted by Congress and to the peculiarities of Michigan criminal law. In enacting 18 U.S.C. § 921(a)(33)(B)(ii), Congress chose to allow the states themselves to dictate the parameters of the statutory exception by recognizing the differences among state laws concerned with loss of civil rights upon conviction for certain offenses. Consequently, the Michigan legislature itself, by choosing to strip even misdemeanants of a core civil right, created the problem now facing the frustrated federal prosecutors. Indeed, had Michigan lawmakers, like almost all other state

---

[2]Both *Cassidy* and *Hampton* involved interpretations of the analogous provisions of 18 U.S.C. § 921(a)(20), dealing with the restoration of civil rights of *felons*, rather than misdemeanants.

legislatures throughout the country, chosen to treat individuals guilty of lesser crimes (misdemeanors) less severely than felons and not stripped those individuals of their right to vote, the problem presented in this case by the later restoration of that right would never have arisen.

In short, it is the peculiar interplay between the relevant federal statutes, Michigan state legislation, and Sixth Circuit precedent that has resulted in a legal conclusion that here permits a statutory exception to swallow the intended rule. Although such a result may not be palatable to many, it is far from "absurd" because, besides being mandated by applicable law, it also gives effect to the Congressional intent to allow states to have input in the definition of the parameters of the crime, and gives effect to the expressed intent of the Michigan legislature.[3] Ironically, the Michigan populace is now forced

---

[3]As explained by the district court in this matter:

[W]hile Congress was aware that in most states persons convicted of misdemeanor offenses do not lose their civil rights, Congress allowed for the possibility that some states may actually strip misdemeanants of their civil rights. Hence, the parenthetical stating, "(if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." 18 U.S.C. § 921(a)(33)(B)(ii). This construction is supported by the comments of Senator Lautenberg, the chief sponsor of the legislation:

Mr. President, another new provision in the final agreement clarifies that a conviction will not lead to a firearm disability if the conviction has been expunged or set aside, or is for an offense for which the person has been pardoned or has had civil rights restored. This language mirrors similar language in current law that applies to those convicted of felonies.

I would note that the language on civil rights restoration, as it has been applied in the past, and as it should be interpreted in the future, refers only to major civil rights, such as the right to vote, to hold public office, and to serve on a jury. *Loss of these rights generally does not flow from a misdemeanor*