# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2170

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota |
| Bret L. Keeney, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  December 12, 2000

Filed:  February 26, 2001

_____

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and LAUGHREY,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

The United States of America ("the government") appeals a final decision entered in the United States District Court for the District of North Dakota dismissing the indictment charging Bret L. Keeney with firearms violations, 18 U.S.C. §§ 922(a)(6), 922(g)(9). See United States v. Keeney, No. C1-00-008 (D.N.D. Apr. 5, 2000) (memorandum and order granting motion to dismiss).  For reversal, the

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, sitting by designation.

government argues that the district court misconstrued the so-called civil rights restoration exception of 18 U.S.C. § 921(a)(33)(B)(ii) in reaching its decision to dismiss Keeney's indictment. For the reasons stated below, we reverse the district court's decision to dismiss Keeney's indictment and remand this matter to the district court for further proceedings consistent with this opinion.

Jurisdiction in the district court was proper based on 18 U.S.C. § 3231. Jurisdiction in this court is proper based on 18 U.S.C. § 3731. The government's notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

In 1998, Keeney was convicted in state court of the misdemeanor crime of domestic violence, which conviction resulted from an assault committed against a former live-in girlfriend. Keeney was sentenced to a term of imprisonment followed by probation. The state court also suspended his firearms privileges pursuant to N.D. Cent. Code § 12.1-32-07 during the period of his incarceration and probation. Keeney was released from probation on March 29, 1999.[2]

The North Dakota Criminal Code, N.D. Cent. Code § 12.1-32-07, requires that "[t]he court shall provide as an explicit condition of every probation that the defendant may not possess a firearm, destructive device, or other dangerous weapon while defendant is on probation."[3]

---

[2]According to the district court, Keeney was incarcerated from November 13, 1996, to March 3, 1997, and he was on probation from March 29, 1997, to March 29, 1999. See United States v. Keeney, No. C1-00-008, slip op. at 2 & n.1 (D.N.D. Apr. 5, 2000) (memorandum and order).

[3]The North Dakota Criminal Code further states:

On September 9, 1999, the Bureau of Alcohol, Tobacco and Firearms ("BATF") executed a search warrant on Keeney's residence and found a nine millimeter handgun. Keeney was charged in a two-count indictment with violations of 18 U.S.C. § 922(a) (6) and § 922(g)(9).[4] Section 922(a)(6) prohibits any person from knowingly making false or fictitious statements in connection with the acquisition or attempted acquisition of a firearm. Section 922(g)(9) prohibits persons convicted of a misdemeanor crime of domestic violence from possessing a firearm.[5] Both offenses were predicated on

1. A person who has been convicted anywhere for a felony involving violence or intimidation, as defined in chapters 12.1-16 through 12.1-25, is prohibited from owning a firearm or having one in possession or under control from the date of conviction and continuing for a period of ten years after the date of conviction or release from incarceration or probation, whichever is later.

2. A person who has been convicted of any felony not provided for in subsection 1 or has been convicted of a class A misdemeanor involving violence or intimidation and that crime was committed while using or possessing a firearm or dangerous weapon . . . is prohibited from owning a firearm or having one in possession or under control from the date of conviction or continuing for a period of five years after the date of conviction or release from incarceration or probation, whichever is the latter.

N.D. Cent. Code 62.1-02-01.

[4]The indictment also included a violation of 18 U.S.C. § 924(a)(2), which is the penalty provision of the federal firearms statute. Record on Appeal at 7-8.

[5]The indictment stated that:

in connection with [Keeney's] attempted acquisition of a firearm . . . [he] knowingly made a false and fictitious written statement on a Firearms Transaction Record Form . . . which statement was likely to deceive [the seller] with respect to a fact material to the lawfulness of such attempted acquisition of the firearm by [Keeney] under the

Keeney's prior conviction for a misdemeanor crime of domestic violence under North Dakota law.   Keeney moved to dismiss the indictment pursuant to the so-called civil rights restoration exception, which provides:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(33)(B)(ii).

Keeney argued that his prior conviction did not count for purposes of applying the federal firearms statutes because his civil rights had been restored following his state conviction.  The district court granted Keeney's motion to dismiss,  reasoning that Keeney's right to possess a firearm was taken away while he was on probation and that, when the alleged federal offenses occurred, he was no longer on probation and his civil rights had been restored.   The court further reasoned that Keeney's probation was included in the "judgment of his conviction and was part and parcel of his punishment which included" incarceration and that, once Keeney's probation ended, his right to

_____

provisions of Chapter 44, Title 18, United States Code, in that [Keeney] falsely represented that he had never been convicted in any court of a misdemeanor crime of domestic violence, which in truth and fact, as [Keeney] then well knew, he had been convicted of misdemeanor Assault and Menacing a person similarly situated to a spouse.

Designated Record on Appeal at 7.

possess firearms was automatically restored. Slip op. at 2. The district court concluded that because Keeney's right to possess firearms had been restored, his predicate conviction could not be considered a "misdemeanor crime of domestic violence." Id. at 3.

The district court distinguished United States v. Smith, 171 F.3d 617 (8th Cir. 1999), in which this court refused to extend the restoration exception to a defendant who was convicted of an underlying misdemeanor offense which did not involve a loss of civil rights. The district court distinguished Smith based on its reasoning that the Iowa statute under which the defendant in Smith was originally convicted did not strip misdemeanor offenders of any of their civil rights while Keeney's conviction for domestic violence required that his right to possess a firearm be taken away while he was on probation. The district court assumed that the privilege of possessing a firearm is commensurate with the loss of civil rights pursuant to 18 U.S.C. § 921(a)(33)(B)(ii). In reaching its conclusion that it could not ignore "the judgment of the State of North Dakota" that Keeney was trustworthy to possess a firearm, the district court noted the observation in Smith, 171 F.3d at 624, that Congress relied on each state's judgment in this regard. See slip op. at 2-3. The district court also referred to McGrath v. United States, 60 F.3d 1005, 1008 (2d Cir. 1995), where the Second Circuit surveyed judicial interpretations regarding the restoration of civil rights pursuant to the restoration exception. The district court did not articulate whether it sought to follow McGrath or to distinguish it. This appeal followed.

**Discussion**

We review *de novo* the district court's decision to grant Keeney's motion to dismiss the indictment. See Smith, 171 F.3d at 619. For reversal, the government contends that Keeney did not lose his civil rights within the meaning of the restoration exception. The government argues that, because the plain language of § 921(a)(33)(B)(ii) uses the term "civil rights" in the plural, Congress intended that

-5-

more than a single civil right had to be restored.  The government further argues that the  "civil rights," which those convicted of a felony typically lose, include the rights to vote, to serve on a jury and to hold public office.   The government suggests that, therefore, Congress did not intend that the restoration exception would apply where these rights were not lost.  It further suggests that  because Keeney did not lose this core cluster of civil rights pursuant to his conviction under North Dakota law, he did not lose his civil rights within the meaning of the restoration exception.   The government additionally argues that, because Keeney did not lose his civil rights upon his conviction, they could not be restored upon the completion of probation.

We respectfully disagree with the analysis of the district court.  As stated in Smith, 171 F.3d at 623, "§ 921(a)(33) only applies to 'civil rights [that have been] restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense).'"  We refused, in Smith, to accept the defendant's argument that, because he did not forfeit civil rights pursuant to his underlying state conviction, his right to equal protection under the Fifth Amendment would be violated absent application of the restoration exception to him.  See id. at 624.  We reasoned that, because most misdemeanor convictions do not result in the loss of civil rights,  to hold otherwise would permit the exception to swallow the rule.  See id. at 624.  In reaching this conclusion, we noted that, because the federal firearms statute is concerned with "preventing a known   . . .  domestic abuser from later using a firearm to inflict the next bout of abuse," and because Congress was cognizant of the fact that domestic abuse offenders who were successful in pleading a felony charge down to a misdemeanor could escape the effect of the felon-in-possession statutes, Congress included, in the firearms statute, a prohibition on possessing a firearm by a domestic abuser convicted of a misdemeanor.  Id. at 625.  Additionally, we emphasized the parenthetical language in the restoration exception which requires that "the law of the applicable jurisdiction [provide] for the loss of civil rights under such an offense." Id. at 623.  Thus, a defendant  must have lost his or her civil rights pursuant to state statute in order to assert that the restoration exception is applicable.  Keeney does not refute

-6-

that his predicate offense of misdemeanor domestic abuse was within the class of offenses included within the prohibition of 18 U.S.C. § 922, but rather he argues that the restoration exception applies to him because his civil rights were taken away pursuant to his conviction and, subsequently, pursuant to North Dakota statute, restored when he was released from probation.

The Second Circuit in McGrath held that a felon's retention of civil rights upon his or her conviction was not the functional equivalent of having had civil rights "restored" for purposes of the civil rights exception granted by § 921(a)(20).  60 F.3d at 1007.[6]  The Second Circuit further held in McGrath that "the ordinary meaning of 'restore' could not encompass a person whose rights were never disabled."  McGrath at 1007, citing United States v. Ramos, 961 F.2d 1003, 1008 (1st Cir. 1992). Therefore, the Second Circuit's opinion in McGrath  and the First Circuit's opinion in Ramos are consistent with this circuit's  holding in  Smith.   Each of these cases holds that the restoration exception only applies to a defendant whose civil rights were both lost and restored pursuant to state statutes.

We consider whether, under North Dakota law, Keeney first lost and then had his "civil rights" restored within the meaning of § 921(a)(33)(B)(ii).   Unless North Dakota law provided for the loss of Keeney's civil rights, the restoration exception is not applicable to him.  See McGrath, 60 F.2d at 1007.  Under North Dakota law, a person convicted of a crime does not necessarily suffer the loss of civil rights.  N.D. Cent. Code § 12.1-33-02 states that:

> a person convicted of a crime  does not suffer  . . .  loss of civil rights .
> .  .  but retains all of his [or her] rights, political, personal, civil, and

---

[6]In United States v. Smith, 171 F.3d 617, 625 (8th Cir. 1999), this court acknowledged that the restoration exception in § 921(a)(33) was modeled after the restoration exception in  § 921(a)(20).

otherwise, including the right to hold public office or employment; to vote; to hold, receive, and transfer property; to enter into contracts; to sue and be sued; and to hold offices of private trust in accordance with law.

Because the general statutory provision, N.D. Cent. Code § 12.1-33-02, specifically states that civil rights, as defined in that statute, are not lost automatically pursuant to a criminal conviction, the specific provisions of the North Dakota statutes under which Keeney was sentenced must be considered to determine if he suffered a loss of civil rights. N.D. Cent. Code § 12.1-32-07 imposes a prohibition on possessing a firearm as a condition of probation. The state court, upon sentencing Keeney for misdemeanor domestic abuse, imposed such a condition. We, therefore, consider whether loss of the right to possess a firearm, pursuant to North Dakota statute, is the loss of civil rights under § 921(a)(33)(B)(ii).

In McGrath, the Second Circuit held that the civil rights in question under 18 U.S.C. § 921(a)(20) "are those which most states extend by virtue of citizenship within their borders: (i) the right to vote; (ii) the right to hold elective office; and (iii) the right to sit on a jury." 60 F.3d at 1007. In United States v. Indelicato, 97 F.3d 627, 630 (1st Cir. 1996), the First Circuit likewise held that "[a]lthough the Congress did not specify which civil rights it had in mind, [in § 921(a)(33)(B)(ii)] the plurality view among the circuits - explicitly adopted by the [First Circuit in United States v. Caron, 77 F.3d 1, 2 (1st Cir. 1996)] - is that Congress had in mind the core cluster of 'citizen' rights . . . namely, the right to vote, to serve on a jury and to hold public office". Significantly, § 921(a)(20) and § 921(a)(33)(B)(ii) both refer to civil rights in the plural, thus suggesting that Congress intended to include a cluster of rights, as referenced in McGrath, within the meaning of the term "civil rights" as contained in these provisions. See Smith, 171 F.3d at 620 (construing a statute, a court looks first to the plain meaning of its words). Although, as noted in Indelicato, 97 F.3d at 631 & n.3 (citations omitted), most circuits have held that "all three civil rights must be restored to avoid the

federal ban" on possession of firearms, we need not reach that issue because Keeney did not lose any of the rights within the core cluster. We further note that N.D. Cent. Code § 12.1-33-02 designates civil rights which a criminal defendant does not automatically lose, including the right to vote and to hold office, which are among the rights the Second Circuit in McGrath found were included in the core cluster of civil rights in question under 18 U.S.C. § 921(a)(20); N.D. Cent. Code § 12.1-33-02 does not mention the possession of firearms.

Consistent with our opinion in Smith and the Second Circuit's opinion in McGrath, we hold that Keeney did not lose his any of his civil rights within the core cluster and, thus, did not have his civil rights restored pursuant to the restoration exception of § 921(a)(33)(B)(ii). We further hold that because the restoration exception did not apply to Keeney, the district court improperly dismissed Keeney's indictment for violations of 18 U.S.C. §§ 922(a)(6) and 922(g)(9).

## Conclusion

For the reasons stated above, we hold that Keeney did not lose his civil rights, and, therefore, did not have his civil rights restored, within the meaning of the restoration exception, 18 U.S.C. § 921(a)(33)(B)(ii). We, therefore, reverse the decision of the district court granting Keeney's motion to dismiss the indictment against him, and we remand this matter for further proceedings consistent with this opinion.

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-