*79 OPINION OF THE COURT
John M. Leventhal, J.
The defendant probationer applies, through the Probation Department, for a limited certificate of relief from disabilities (hereinafter called CRD) (Correction Law § 702) which would authorize him “to apply for hunting licenses and use long guns — solely in governmental recognized hunting areas outside of New York City, and solely during designated autumn hunting seasons.” The defendant has completed his community service with high praise from the office where he had worked and is a first time offender who would otherwise be eligible for a CRD.[1] (Correction Law § 700.) He continues to serve his probationary sentence.
This application for a CRD requires the court to consider three federal criminal statutes, contradictory United States Court of Appeals decisions, contradictory New York lower court decisions, and novel issues apparently not decided by any court.
Background
On February 22, 1997, the defendant, after a parental visit, brought his children directly to his then wife (now former wife) in contravention to a court order of protection (hereinafter COOP). Thereafter, a verbal and physical confrontation occurred between the defendant and his wife. The COOP provided that the defendant was to return his children to the local police station.
The defendant was indicted and tried for crimes involved in this incident and another.
On March 24, 1999 after a jury trial, the defendant was found guilty of assault in the second degree (Penal Law § 120.05 [6]), two counts of assault in the third degree (Penal Law § 120.00 [1]), and two counts of criminal contempt in the first degree (Penal Law § 215.51 [b] [v], [vi]).
After trial and prior to sentence, defendant successfully moved this court to set aside the guilty verdicts as to all assault counts (CPL 330.30). This court held that “the evidence adduced at trial was devoid of legal sufficiency to support the verdict finding that the defendant caused ‘physical injury5 55 to *80 his former wife and former father-in-law (see People v Adams, NYLJ, Sept. 23, 1999, at 28, col 3). On September 15, 1999, the defendant was sentenced on the criminal contempt in the first degree convictions to five years’ probation (the first year to year and one half on intensive supervised probation) and included, as a special condition, 500 hours of community service. The court also issued a COOP which is to expire on September 14, 2004.
New York’s Felon-in-Possession Law
New York bars the issuance to or renewal of a firearm license to a person who has been convicted of a “felony” (Penal Law § 400.00 [1], [11]; see Penal Law § 10.00 [5] [for definition of felony]; see also Penal Law § 265.00 [17]).
This statutory bar applies to firearms as defined in Penal Law § 265.00 (3). A rifle is not a firearm unless “one of the barrels [is] less than sixteen inches in length” (Penal Law § 265.00 [3] [c]). Thus, there is no prohibition against a felon or a person who is under a COOP from possessing a hunting rifle (CPL 530.14; Penal Law § 400.00 [1], [11]; see Matter of Alarie, 168 Misc 2d 329). Therefore, a CRD is not necessary for the possession of a hunting rifle under New York State law (id.).
Issues to be Considered in Deciding Whether to Sign a CRD
The CRD may be helpful to eliminate criminal liability for numerous federal weapon possession crimes. In order to determine whether to issue a CRD, the court must decide whether the issuance of a CRD would remove the federal bar against possession of a firearm. If the defendant still could not lawfully possess the hunting rifle even after the court’s issuance of a CRD, then the court would be deceiving the defendant as to the legality of his possession of a weapon (see Yanovitch v United States, 985 F Supp 17, 22), possibly be violating the Due Process Clause of the US Constitution (see United States v Beavers, 206 F3d 706, 710) and performing a worthless act. Under those circumstances, the court believes that it would be prohibited from issuing the CRD. Even if permitted, the court would not and should not perform a useless act.
Federal Felon-in-Possession Law
It is unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess in or affecting commerce any firearm or ammunition, or to receive any firearm or ammunition which has been *81 shipped or transported in interstate or foreign commerce (18 USC § 922 [g] [1]).
The “term ‘firearm’ means * * * any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive” (18 USC § 921 [a] [3]). The term “firearm” includes hunting rifles (Scarborough v United States, 431 US 563, 574-575; see United States v Ramirez-Rios, 270 F3d 1185; United States v Clingan, 254 F3d 624; Federal Sentencing Guidelines § 2K2.1 [b] [2]).[2]
The court must now determine what possession “in or affecting commerce” means.
Congress’ commerce authority (US Const, art I, § 8) includes the power to regulate those activities having a substantial relation to interstate commerce. (United States v Lopez, 514 US 549, 558-559.) “Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained.” (Lopez, 514 US at 560; United States v Morrison, 529 US 598, 610.)
“There is no question that the market in firearms generally is heavily interstate — indeed, international — in character. E.g., 18 U.S.C. § 922(q)(l)(D) * * * S.Rep. No. 90-1097 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2164-65 (noting testimony that ‘50 to 80 percent of the crime guns that are confiscated each year are foreign imports’ and that ‘90 out of every 100 crime guns confiscated in Detroit are not purchased and registered in Michigan and that the prime source of these crime guns is by purchases in neighboring Ohio, whose controls on firearms are minimal’). Because of the ease of moving weapons across state and national lines, Congress has rationally concluded that it cannot rely on the states to control the market in these devices by themselves. See Omnibus Crime Control and Safe Streets Acts of 1968, Pub.L. No. 90-351, § 901(a)(1), 82 Stat. 197, 225 (‘[T]here is a widespread traffic in firearms moving in or other affecting interstate or foreign commerce * * * ’).” (United States v Haney, 264 F3d 1161, 1169.)
In Scarborough (431 US at 575), the Supreme Court held that a predecessor statute of 18 USC § 922 (g) (1) required no more than a minimal nexus that the firearm has been, at some time, in interstate commerce. The federal appellate courts have *82 consistently applied the minimal nexus rule to 18 USC § 922 (g) (1) in upholding the constitutionality of the “felon-in-possession statute” (see United States v Gaines, 295 F3d 293; United States v Scott, 263 F3d 1270; United States v Stuckey, 255 F3d 528; United States v Santiago, 238 F3d 213, 216-217; United States v Dorris, 236 F3d 582, 585-586; United States v Napier, 233 F3d 394, 399-402; United States v Wesela, 223 F3d 656, 659-660).[3] All that is necessary is that a felon possess a weapon that at sometime, no matter how remote, has traveled in interstate commerce (id.; United States v Dupree, 258 F3d 1258, 1260; United States v Carter, 270 F3d 731, 734-735; Gillespie v City of Indianapolis, 185 F3d 693, 705).
At oral argument the defendant claimed that Remington manufactures in New York. The court has investigated the matter and has found that while Remington does manufacture hunting rifles in Ilion, New York, some of the parts used are shipped from other states. Often major components are also manufactured in New York, but shipped to other states for processing before return to New York for sale. Thus, it is clear that the jurisdictional predicate of traveling in interstate commerce is met.
Since the defendant has been convicted of a felony, he is subject to the provisions of 18 USC § 922 (g) (1).
18 USC § 921 (a) (20) provides for an exception to the felon-in-possession prohibition and an exception to that exception known as the “unless” clause.
Exception to Definition of Conviction
18 USC § 921 (a) (20) removes the status of felon for purposes of felon-in-possession gun possession crime if the conviction has been expunged or, as critical in this case, the state has *83 “restored” a felon’s “civil rights.” The determination of whether a state has restored a felon’s civil rights is determined by the law of the state of conviction (United States v Metzger, 3 F3d 756, 758). The state need not restore all civil rights, but must “substantially’ restore a felon’s rights (Metzger, 3 F3d at 758; United States v Woodall, 120 F3d 880, 881; United States v Thompson, 117 F3d 1033, 1034; United States v Collins, 61 F3d 1379, 1382). Nonetheless all core civil rights must be restored in order to obtain the benefit of this exemption (Metzger, 3 F3d at 758-759; Woodall, 120 F3d 880; United States v Essig, 10 F3d 968, 975-976; United States v Fisher, 38 F3d 1144, 1147). While the statute does not define the core civil rights, federal courts have defined the three core civil rights as the right to vote, the right to serve on a jury and the right to hold public office (McGrath v United States, 60 F3d 1005, 1007; Woodall, 120 F3d at 882; United States v Thomas, 991 F2d 206, 212-213; cf. People v Kern, 75 NY2d 638, 650-653).
The United States Courts of Appeals are divided as to the status of a felon who never lost any civil rights. The United States Court of Appeals for the Second Circuit (McGrath, 60 F3d 1005) and some other circuits (United States v Keeney, 241 F3d 1040, 1043-1045; Fraternal Order of Police v United States, 152 F3d 998, 1004) prohibit felons who never lost their civil rights from possessing firearms. These courts hold that if a felon never lost the civil rights, then the felon could never have them “restored.”
In contrast, other United States Courts of Appeals hold the following proposition to be irrational: a felon who never lost any civil rights is worse than a felon who lost those rights but had them restored (United States v Indelicato, 97 F3d 627, 630-631; United States v Qualls, 108 F3d 1019, 1023, revd on other grounds 525 US 957; Thomas, 991 F2d 206). These courts hold that a felon who never lost any civil rights qualifies as a felon who has had his or her civil rights restored.
New York is in the Second Circuit, which takes the word “restore” literally. The Second Circuit prohibits firearm possession by a felon who never lost civil rights as those rights could not be “restored.” The exception is therefore inapplicable.
This court must determine what civil rights are lost in New York by a felon, and then, if these rights can be restored by a CRD.
Under Civil Rights Law § 79 (1), a convicted person who is incarcerated for a day or longer in a state correctional institu *84 tion loses all civil rights during the period of incarceration (see Matter of Lindgren, 232 NY 59; Matter of O’Connor, 173 Misc 419; Matter of Anonymous, 17 Misc 2d 691). Once an incarcerated convicted person is released some of the civil rights are restored.
In this case, the defendant was never incarcerated. Thus, Civil Rights Law § 79 (1) does not apply to him.
In New York a felon who was never incarcerated does not lose the right to vote (see Election Law § 5-106 [2], [5]). This court has not found any statute that provides for the loss of the right to hold public office by a felon who was never incarcerated (see Public Officers Law § 30;[4] but see United States v Flanagan, 1997 WL 28700, 1997 US Dist LEXIS 649 [ED Pa]). However, a felon, whether incarcerated or not, loses the right to serve on a jury (Judiciary Law § 510 [3]).
Under Correction Law § 701, the issuance of a CRD relieves a convicted person of the automatic bar from serving on a jury. It does not, however, restore the right to serve on the jury. The determination whether a defendant is eligible for jury service is made by the commissioner of jurors not the court (see 1991 Ops Atty Gen No. F 91-10).
Thus, the CRD is not a document restoring civil rights. As will be stated later in this opinion (section entitled the “unless” clause), the CRD is legally insufficient to permit weapon possession by a former felon. The document restoring a defendant’s rights must restore also the defendant’s right to possess all weapons (see infra).
The “Unless” Clause
18 USC § 921 (a) (20) further states that a restoration of civil rights is effective “unless such pardon, expungement * * * provides that the person may not * * * possess, or receive a firearm.” (Emphasis added.) In effect the statute provides that even if a felon should have all civil rights restored, that is insufficient to comply with the exemption if the document restoring those rights prohibits possession of a weapon.
In Caron v United States (524 US 308), the Court held that under the “unless” clause, if a state permits possession of a limited class of firearms, but prohibits possession of a different *85 class of firearms, then the felon may not possess any firearm including those that the state permitted. In order to qualify for the exemption to the felon-in-possession prohibition, the felon must have all core civil rights restored and must be authorized to possess all types of firearms (Pennsylvania State Police v Paulshock, 789 A2d 309, 314 [Pa Commw]; United States v Gallaher, 275 F3d 784, 791 n 3; United States v Tait, 202 F3d 1320, 1322; United States v Qualls, 172 F3d 1136, 1137-1139).
As stated above, this defendant is ineligible to possess certain firearms (Penal Law §§ 265.00, 400.00 [1]). Thus, unless a CRD relieves a defendant of all firearm restraints, then a felon would be prohibited from possessing any firearm.
One nisi prius court has held that a CRD cannot relieve a defendant from firearm restrictions imposed by New York on a felon (Alarie, 168 Misc 2d at 330). The court did not explain its reasoning. It merely cited to Penal Law § 400.00. Dicta in an Appellate Division decision (Matter of Hines v Kelly, 222 AD2d 277, 278), dicta in two nisi prius courts (People v Flook, 164 Misc 2d 284, 285; Matter of Valhos, 145 Misc 2d 657, 659) and a Broome County judge in a letter to a Pennsylvania court (Pennsylvania State Police v Viall, 774 A2d 1288, 1291 [Pa Commw]), all indicate that a CRD may remove the automatic bar contained in Penal Law § 400.00 (1) to license a felon (see also 1975 Ops Atty Gen [I] 306).
Correction Law § 701 (1) permits a court to relieve an “eligible offender of all forfeitures.” The statute does not limit the forfeitures except possibly to certain persons to retain certain offices.
The purpose of the CRD is to effectuate the public policy “to encourage the licensure and employment” of convicted individuals (Correction Law § 753 [1] [a]; Matter of Bonacorsa v Van Lindt, 71 NY2d 605, 611-614). Once issued, a CRD creates a presumption of rehabilitation (Correction Law § 753 [2]; Matter of Arrocha v Board of Educ., 93 NY2d 361, 365). While the CRD creates a presumption of rehabilitation and removes the automatic bar from obtaining a license, it “does not establish a prima facie entitlement to the license.” (Id. at 365.) The licensing agency still maintains the ultimate control whether to grant the license (id.; Matter of Plantone v State of New York Dept. of State, 251 AD2d 1049; Matter of Maneri v New York State Dept. of State, 240 AD2d 748).
The court finds that it has the right to eliminate the automatic forfeiture of the right to a pistol or gun license. However, the CRD will not eliminate the firearm disability, *86 that must be done by the licensing agency. Thus, the CRD in effect authorizes a felon to apply to the licensing agency. The licensing agency cannot automatically deny the right to the license, but may do so in its discretion. The CRD “restores” the felon’s civil rights, but continues the bar of possessing a weapon until the licensing agency authorizes possession. As such the “unless” clause of 18 USC § 921 (a) (20) comes into effect because in New York the document restoring the civil rights also contains a bar to possession of a weapon.[5]
The court holds that even if the court were to issue a CRD and the licensing agency permitted the possession of all firearms, the defendant’s possession of a weapon that at sometime traveled in interstate commerce would constitute a federal crime.
The court holds that it is barred from granting the defendant’s request, or, if not prevented by law, should not perform a useless act.
Domestic Violence Misdemeanant
“It shall be unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic violence * * * to * * * possess in or affecting commerce, any firearm” (18 USC § 922 [g] [9]). “[T]he term ‘misdemeanor crime of domestic violence’ means an offense that (i) is a misdemeanor under Federal or State Law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse * * * .” (18 USC § 921 [a] [33] [A].)
To establish the “use or attempted use of physical force element” all that is necessary is that the individual be convicted of a crime containing an element of an act “which was intended to cause pain or injury to another, coupled with the apparent ability to execute said act” (United States v Smith, 171 F3d 617, 621). “[P]hysical force may be characterized as power, violence, or pressure directed against another person’s body” (United States v Nason, 269 F3d 10, 16).
In this case, the court vacated the assault in the third degree conviction because the People failed to make out a prima facie case that the victim suffered “physical injury.” CPL 330.50 (1) requires a court upon setting aside a verdict to take the same action as the appropriate appellate court. CPL 470.15 (2) (a) *87 provides that when an appellate court determines that the trial evidence is not legally sufficient to support the verdict for a particular offense, but is sufficient to support a lesser included offense, then the appellate court may reduce the conviction to the lesser included offense.
In this case, the court should have reduced the defendant’s conviction to the lesser included offense of attempted assault in the third degree, a misdemeanor. Attempted assault in the third degree would qualify under the federal statute as a domestic violence misdemeanor.
Because of this error, the court, in determining whether to issue the CRD, will consider the defendant as if he were convicted of a domestic violence misdemeanor.
The same exception and the same “unless” clause found in the felon-in-possession crime are contained in the domestic violence crime with one addition (18 USC § 921 [a] [33] [B] [ii]). In this section after the word “restored,” there appears a parenthesis containing the phrase “if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense.” This additional phrase has led some courts to surmise that those circuits that hold the word “restore” under 18 USC § 921 (a) (20) to include the situation where the felon never lost any civil rights would come to a different result for a domestic violence misdemeanant. The additional wording leads to the conclusion that the word “restore” in 18 USC § 921 (a) (33) (B) would not encompass domestic violence misdemeanants who never lost civil rights (Smith, 171 F3d at 623). In addition, the federal courts hold that the word “restore” is not applicable to situations where the domestic violence misdemeanant never lost civil rights, as there is virtually no state where a domestic violence misdemeanant loses civil rights (id.; United States v Hancock, 231 F3d 557, 566-567; United States v Keeney, 241 F3d 1040, 1043; National Assn. of Govt. Empls. v Barrett, 968 F Supp 1564, 1575 n 15, affd on op below sub nom. Hiley v Barrett, 155 F3d 1276). Thus, if the word “restore” were to include situations where the civil rights were never lost, the exception would render the statutory crime a nullity (id.).
The New York State Attorney General has opined that a New York court is prohibited from issuing a CRD where the person has been convicted of a domestic violence misdemeanor as defined by federal law (1998 Ops Atty Gen No. F 98-8 § II [July 30, 1998]). The basis of the then Attorney General Dennis C. Vacco’s opinion is that in New York a domestic *88 violence misdemeanant does not lose any civil rights and therefore cannot have them “restored.” Thus, it is argued that there is no federal statutory exception to such convicted person’s possession of a firearm, and it would be illegal for such an individual to possess a weapon regardless of a CRD.
In this case, the argument has little force because the defendant has been convicted of a felony. If the CRD could restore the civil rights of a felon, then it would automatically restore the civil rights lost as a result of the misdemeanor conviction.
However, as stated in the felon-in-possession section, the CRD contains a limitation on the possession of a weapon. Thus, the “unless” clause prohibits weapon possession, and the CRD does not restore the right to serve on a jury.
Thus, a defendant in New York who has only been convicted of a domestic violence misdemeanor is ineligible for a CRD which would restore the right to possess any type of weapon.
Order of Protection
18 USC § 922 (g) (8) bans gun possession for those subject to a protective order as follows:
“It shall be unlawful for any person who is subject to a court order that (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.”
This statute contains three elements: (1) an order of protection preceded by a hearing and notice containing certain restrictions and findings; (2) knowing possession of a firearm; and (3) possession affecting interstate commerce (United States v Bostic, 168 F3d 718, 721-722; United States v Reddick, 203 F3d 767, 771).
The elements of knowing, possession, and interstate commerce are identical to what this court has stated for the felon- *89 in-possession statute (Bostic, 168 F3d at 723; United States v Baker, 197 F3d 211; United States v Wilson, 159 F3d 280, 286-287).
The element of hearing and notice is fulfilled when a defendant has had an opportunity to participate and be heard in the determination of the issuance of the protective order (Wilson, 159 F3d at 289-290, 291-292; United States v Calor, 172 F Supp 2d 900, 904-905; cf. United States v Spruill, 292 F3d 207, 219-221).
In this case, the defendant was present at sentencing, was aware that the court could issue a COOP (CPL 530.12), and was asked if he or his counsel wished to say anything. Further, defense counsel was given the opportunity to read the probation report, which contained a request by the victim for a COOP. The requirement of hearing and notice was fulfilled.[6]
This section has no exceptions for a convicted individual who has had civil rights restored. The apparent reason is as stated by the court in United States v Meade (175 F3d at 226; see also United States v Kafka, 222 F3d 1129, 1132):
“[Possession of firearms by persons laboring under the yoke of anti-harassment or anti-stalking restraining orders is a horse of a different hue. The dangerous propensities of persons with a history of domestic abuse are no secret, and the possibility of tragic encounters has been too often realized. We think it follows that a person who is subject to such an order would not be sanguine about the legal consequences of possessing a firearm, let alone of being apprehended with a handgun in the immediate vicinity of his spouse.”
The defendant, for as long as the COOP is in effect, is barred by 18 USC § 922 (g) (8) from possessing a firearm, including a hunting rifle.
Court’s Discretion
Even if the federal statutes were not a bar to possession of a firearm by this defendant, the court in exercising its discretion cannot shut its eyes to the realities of life and the policies that have driven the federal statutes previously discussed.
“[T]he presence of a gun dramatically increases the likelihood that domestic violence will escalate into murder.” *90 (142 Cong Rec S 11227 [Sept. 25, 1996] [Senator Lautenberg, sponsor of 18 USC § 922 (g) (9)]; James Bailey, Risk Factors for Violent Death of Women in the Home, 157 Archives of Internal Med 777 [1977]; Arthur L. Kellerman, Gun Ownership as a Risk Factor for Homicide in the Home, 329 New Eng J of Med 1084 [1993]; Linda E. Saltzman, Weapon Involvement and Injury Outcomes in Family and Intimate Assaults, 22 J of Am Med Assn 3040 [1992] — all cited in United States v Lewitzke, 176 F3d 1022, 1026, 1026 n 3).
In performing lethality assessments, the possession of a gun is a main factor that significantly increases the risk of homicide. This court notes that guns and domestic violence are often a deadly combination.
In this case, as a result of a Molineux hearing, the court learned of other times that the defendant acted violently against the victim. The Probation Department recommends against issuing the CRD. The probation report indicates prior acts of violence against the defendant’s children.
The court, were it to have had discretion, would decline to grant the certificate of relief of civil disabilities that would permit the probationer “to apply for hunting licenses and use long guns — solely in governmental recognized hunting areas outside of New York City, and solely during designated autumn hunting seasons.” This is especially true where, as here, not only must the court grant relief for a hunting rifle, but must also grant relief for all types of weapons.
The application is denied to the extent that the defendant requests permission to apply for a hunting license and to possess and use a rifle. The court does, however, grant probationer a CRD for employment purposes only.

. The court on July 18, 2002 requested defendant’s attorney, counsel for the Probation Department, and the prosecuting Assistant District Attorney to brief certain issues. Defense counsel’s submission, in addition to responding to the court’s letter, expanded the defendant’s application to include the issuance of CRD for employment purposes.

. Since the possession of a fireman for hunting purposes is under federal law a mitigating sentencing consideration, it must be illegal. This section reduces the base level to a level 6 (United States v Lewitzke, 176 F3d 1022, 1028).

. The circuit courts have upheld the constitutionality of 18 USC § 922 (g), because of the presence in the statute of the jurisdictional element “in or affecting commerce,” despite the Supreme Court’s recent decisions holding that various laws were unconstitutional as having no substantial effect on interstate commerce (e.g. United States v Jones, 529 US 848, 859 [federal arson statute did not reach arson of owner occupied residence that is not used for any commercial purpose because such property could not be “used in * * * any activity affecting commerce,” as required by statute]; Morrison, 529 US 598 [Congress’ creation of a federal private cause of action in tort for spousal abuse or domestic partner battering is an invalid exercise of its power under Commerce Clause as conduct does not have a substantial impact on interstate commerce]; Lopez, 514 US at 562 [the Supreme Court held inter alia that neither 18 USC § 922 (q) “nor its legislative history contain(s) express congressional finding regarding the effects upon interstate commerce of gun possession in a school zone”]).

. This section provides for the loss of a public office by a person who while in office commits a crime directly related to that office. It does not generally provide for the disqualification of a convicted person from holding office.

. Federal courts prohibit looking beyond the document that restores the felon’s civil rights (see United States v Bost, 87 F3d 1333, 1335-1338).

. The Probation Department has pointed out that as part of the COOP the defendant is barred during the eifective period of the COOP from possessing a weapon. Obviously, if this court were to grant the defendant’s request, it would modify the COOP accordingly.