# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 04-1135

—————

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri |
| William Wayne Kirchoff, | * | |
| | * | |
| Appellant. | * | |

—————

Submitted: May 12, 2004
Filed: October 20, 2004

—————

Before MORRIS SHEPPARD ARNOLD, McMILLIAN and MELLOY,
  Circuit Judges.

—————

McMILLIAN, Circuit Judge.

William Wayne Kirchoff appeals from a final judgment of the District Court for the Western District of Missouri[1] entered upon his conditional guilty plea to possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(9). Kirchoff reserved the right to appeal the district court's denial of his motion to dismiss the indictment. We affirm.

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

**BACKGROUND**

In February 2000, an information filed in Missouri state court charged Kirchoff with three misdemeanor counts of third-degree assault, in violation of Mo. Rev. Stat. § 565.070. In January 2001, an information charged him with two misdemeanor counts of third-degree domestic assault, in violation of Mo. Rev. Stat. § 565.074. He was released on bond in both cases. On March 14, 2001, Kirchoff's bond was revoked in the first case, and he was held in jail pending trial. After the cases were consolidated, on April 13, 2001, Kirchoff entered guilty pleas to count I of each information. The state court sentenced Kirchoff to concurrent sentences of one year in the county jail, but suspended execution of the sentences and placed Kirchoff on two years probation.

On August 7, 2002, Kirchoff was charged in federal district court with possession of firearms by a person who had been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). Specifically, the indictment charged that from April 2002 through June 2002, Kirchoff illegally possessed a 12-gauge shotgun, a .45 caliber pistol and ammunition, and a .556 caliber rifle. On August 14, 2002, the state court revoked Kirchoff's probation, and he began serving the concurrent one-year sentences.

On December 13, 2002, Kirchoff filed a motion in the district court to dismiss the indictment. He argued that § 922(g)(9) did not apply to him by virtue of the restoration-of-rights exception of 18 U.S.C. § 921(a)(33)(B)(ii), which provides that a person shall not be considered to have been convicted of a crime of domestic violence if:

> the conviction has been expunged or set aside, or is an offense for which
> the person has been pardoned or has had civil rights restored (if the law
> of the applicable jurisdiction provides for the loss of civil rights under
> such an offense) unless the pardon, expungement, or restoration of civil

rights expressly provides that the person may not . . . possess . . . firearms.

18 U.S.C. § 921(a)(33)(B)(ii). Missouri law provides that a person who is convicted "[o]f any crime shall be disqualified from registering and voting in any election under the laws of this state while confined under a sentence of imprisonment." Mo. Rev. Stat. § 561.026.

The district court denied Kirchoff's motion to dismiss. The district court reasoned that because at the time of the commission of the § 922(g) offense, Kirchoff had not been confined under a sentence of imprisonment, under Missouri law his right to vote had not been taken way and thus could not have been restored. The district court relied on United States v. Smith, 171 F.3d 617 (8th Cir. 1999) (Smith), and United States v. Keeney, 241 F.3d 1040 (8th Cir.) (Keeney), cert. denied, 534 U.S. 890 (2001), in which this court held that under the plain language of § 921(a)(33)(B)(ii) defendants who had not lost their civil rights under state law could not have had their rights restored.

## DISCUSSION

We review the district court's denial of Kirchoff's motion to dismiss the indictment de novo. Smith, 171 F.3d at 619. We also review statutory construction issues de novo. United States v. Koons, 300 F.3d 985, 990 (8th Cir. 2002). Kirchoff first argues that the district court erred in dismissing his motion to dismiss because under Missouri law actual incarceration is not necessary to trigger the restoration exception. We disagree. "In construing a statute, we look first to the plain meaning of the words of the statute." Smith, 171 F.3d at 620. In this case, the language of Mo. Rev. Stat. § 561.026 is plain. A convicted person only loses his or her civil rights "while confined under a sentence of imprisonment." Mo. Rev. Stat. § 561.026

(emphasis added).[2] At the time Kirchoff committed the § 922(g) offense he was not "confined under a sentence of imprisonment" and thus had not lost his civil rights under Missouri law. As in Smith and Keeney, because Kirchoff had not lost his civil rights, under the plain language of § 921(a)(33)(B)(ii), he could not have had them restored.

Kirchoff asserts that Smith and Keeney are not controlling because, unlike Missouri, the state statutes at issue in those cases did not provide for loss of civil rights for misdemeanants. Kirchoff argues that because under Missouri law there is a possibility of restoration, he fits within § 921(a)(33)(B)(ii). He asks this court to follow the Sixth Circuit's reasoning in United States v. Wegrzyn, 305 F.3d 593 (6th Cir. 2003). In that case, a Michigan statute provided that a person convicted of a misdemeanor lost his or her civil rights "while confined" in a correctional facility. The Sixth Circuit held that, even if a misdemeanant had not been sentenced to incarceration, he or she was nonetheless entitled to the restoration exception. The court believed that to hold otherwise would lead to the "untenable situation" where a person "who presumably committed a more egregious offense justifying incarceration would . . . be allowed–upon completion of the jail sentence–to possess a firearm," but that a person "whose transgression did not merit such severe punishment would be treated more harshly at the conclusion of a more lenient punishment." Id. at 595.

---

[2]The parties do not address whether the loss of the right to register to vote and to vote is a loss of civil rights as that term is used in 18 U.S.C. § 921(a)(33)(B)(ii). For purposes of this opinion we will assume that the loss of those rights satisfies the statute. We note, however, that "[a]lthough the Congress did not specify which civil rights it had in mind [in § 921(a)(33)(B)(ii)], the plurality view among th circuits . . . is that Congress had in mind the core cluster of citizen rights–namely, the right to vote, to serve on a jury and to hold public office." United States v. Keeney, 241 F.3d 1040, 1044 (8th Cir.) (internal quotation omitted), cert. denied, 534 U.S. 890 (2001). But see United States v. Wegrzyn, 305 F.3d 593, 596 (6th Cir. 2003) (holding that loss of right to vote was loss of civil rights under restoration exception).

We decline Kirchoff's invitation. Indeed, in Smith, this court rejected the reasoning of the Sixth Circuit. In Smith, the defendant argued that § 921(a)(33)(B)(ii) was unconstitutional because the distinction "between a misdemeanant who is ineligible for the restoration exception because he never lost his civil rights and a felon who has had his civil rights restored" was irrational and violated the equal protection clause. 171 F.3d at 624. We disagreed. We noted that the distinction was "caused by Congress's reference to state laws that differ in the application of their restoration rules." Id. We further noted that § 921(a)(33)(B)(ii) was modeled after § 921(a)(20), which provides that a person who had been convicted of a crime punishable by a term of imprisonment of more than one year, would not be considered of being so convicted if under state law the conviction had "been expunged, or set aside or for which the person has been pardoned or has had his civil rights restored." We cited with approval cases that had rejected challenges to § 921(a)(20), because the courts had held "it was rational for Congress to rely on 'a state's judgment that a particular person or class of persons is, despite a prior conviction, sufficiently trustworthy to possess firearms,' despite the anomalous results." Id. at 624-25 (quoting United States v. McGrath, 60 F.3d 105, 1009 (2d Cir. 1995)). We noted that "ten years after enacting the much-criticized restoration exception in § 921(a)(20)[,] . . . Congress continued to look to state law to define the restoration exception" in § 921(a)(33)(B)(ii) and "was cognizant of the disparity it would create." Id. at 625.[3]

In Smith, we acknowledged that "most misdemeanor convictions do not result in the loss of civil rights[,]" and thus would not fit within the restoration exception. Id. at 624. However, we noted that "Congress was concerned with domestic abuse offenders who were successful in pleading a felony charge down to a misdemeanor

---

[3]In United States v. Smith, 171 F.3d 619, 625 (8th Cir. 1999) this court also rejected equal protection challenge to § 921(a)(33)(B)(ii), reasoning that a misdemeanant could receive a pardon and thus have his rights restored under § 921 (a)(33)(B)(ii).

and thus escaping the effect of the felon-in-possession statutes." Id. at 625. Indeed, we noted that in enacting § 921(a)(33)(B)(ii), "Congress was concerned with the exact situation faced here: preventing a known (from the fact of the misdemeanor conviction) domestic abuser from later using a firearm to inflict the next bout of abuse." Id. Indulging in the legal fiction that a person who had not lost his civil rights had nonetheless had them restored, we reasoned, would vitiate the § 922(g) exception because "almost all misdemeanants would fit within the exception." Id. at 624. In this case, under Kirchoff's reasoning, all, or almost all, misdemeanants convicted of domestic assault in Missouri would be allowed to possess firearms, and thus "the exception would swallow the rule." Id. "Such a result is to be avoided." Id.

We note the recent case of United States v. Jennings, 323 F.3d 263 (4th Cir.) (Jennings), cert. denied, 124 S. Ct. 531 (2003). In Jennings, the defendant had a state misdemeanor conviction for domestic violence but had not lost his civil rights under a state law that provided for a loss of rights while confined under a sentence of imprisonment. The court first rejected his argument that he was entitled to the restoration exception under the plain language of § 921 U.S.C. § 921(a)(33)(B)(ii), stating that "'restoration of a thing never lost . . . is a definitional impossibility.'" Id. at 267 (quoting McGrath, 60 F.3d at 1007). The Fourth Circuit then addressed the defendant's argument that the statute was unconstitutional because it produced an "absurd result" by treating "misdemeanants who never lost their civil rights more harshly than those misdemeanants who temporarily lost their civil rights while incarcerated and had them restored upon release from incarceration." Id. The Fourth Circuit rejected the reasoning of the Sixth Circuit in Wegrzyn, finding this court's reasoning in Smith and Keeney "more persuasive on the question of whether a literal application of the word 'restored' to [the defendant] produce[d] an absurd result." Id. at 269. In addition to the reasons we rejected the identical argument in Smith, the Fourth Circuit also noted that "Congress reasonably could conclude that misdemeanants who had been through a state's restoration process and had regained

their civil rights were more fit to own firearms than misdemeanants who had not lost their civil rights, had not had their convictions expunged, or had not been pardoned." Id. at 275.

In the alternative, Kirchoff argues that if actual confinement is necessary for a loss of civil rights under Mo. Rev. Stat. § 561.026, he lost his civil rights from March 14 to April 13, 2001, while he was in jail pending disposition of his two misdemeanor cases. We disagree. Section 561.026 provides for a loss of civil rights only when a person is "confined under a sentence of imprisonment." From March 14 to April 13, 2001, Kirchoff was not confined under a sentence of imprisonment, but was a pre-trial detainee, and thus did not lose his civil rights. Rather, he lost his civil rights on August 14, 2002, when he was incarcerated. Although, as Kirchoff points out, Mo. Rev. Stat. § 558.031, provides that a person receives credit on a sentence for pre-trial detention, the statute does not provide for a loss of civil rights during pre-trial detention; nor does it merge his period of pre-trial detention into a single sentence of imprisonment, as he argues. As the government notes, Kirchoff did not have his civil rights restored until May 19, 2003, when he was released from incarceration, almost a year after he committed the federal firearms offense. It was only at that time could Kirchoff legally possess a firearm.

At oral argument, Kirchoff suggested that because he had had his civil rights restored in 2003, the restoration retroactively invalidated the 2002 indictment. Indeed, he argued that if a defendant's rights are restored many years after a § 922(g) conviction, the conviction must be set aside. We disagree. As previously explained, in enacting § 921(a)(33)(B)(ii), "Congress was concerned with the exact situation faced here: preventing a known (from the fact of the misdemeanor conviction) domestic abuser from later using a firearm to inflict the next bout of abuse." Smith, 171 F.3d at 625. At the time Kirchoff committed the 2002 federal firearms offense, he had not had his civil rights restored and therefore could not lawfully possess a firearm, which is what Congress intended. See Jennings, 323 F.3d at 274 (rejecting

defendant's argument because, among other reasons, it "substantially undercut[] the federal policy aimed at trying to take firearms out of the hands of persons convicted of a [misdemeanor crime of domestic violence]").

We also reject Kirchoff's argument that the district court failed to apply the rule of lenity. The rule of lenity only applies if there is a "grievous ambiguity or uncertainty in the language and structure of [a statute]." United States v. Andrews, 339 F.3d 754, 758 n.3 (8th Cir. 2003) (quoting United States v. Speckman, 330 F.3d 1080, 1083 (8th Cir. 2003)). There is no such ambiguity or uncertainty in § 921(a)(33)(B)(ii).

Accordingly, the judgment of the district court is affirmed.

_____